FILED
CLERK, U.S. DISTRICT COURT

12/20/21

CENTRAL DISTRICT OF CALIFORNIA
BY: __CS_____ DEPUTY

Michael N. Feuer (State Bar No. 111529)
City Attorney
Kathleen A. Kenealy (State Bar No. 212289)
Chief Deputy City Attorney
LOS ANGELES CITY ATTORNEY'S OFFICE
221 N. Figueroa Street, Suite 1000
Los Angeles, California 90012

BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
Eric M. George (State Bar No. 166403)
  egeorge@bgrfirm.com
Guy C. Nicholson (State Bar No. 106133)
  gnicholson@bgrfirm.com
Kathryn L. McCann (State Bar No. 245198)
  kmccann@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Defendants
ERIC GARCETTI, JOSEPH
BRAJEVICH, THE CITY OF LOS
ANGELES and THE CITY OF LOS
ANGELES BY AND THROUGH ITS
DEPARTMENT OF WATER AND
POWER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ERIC M. HALEY, Chapter 7 Trustee for the Bankruptcy Estate of In re: Ardent Cyber Solutions, LLC, Case No, 2:20-bk-06722-PS, <br><br> Plaintiff, <br><br> vs. <br><br> ERIC GARCETTI, JOSEPH BRAJEVICH, THE CITY OF LOS ANGELES, THE CITY OF LOS ANGELES, BY AND THROUGH ITS DEPARTMENT OF WATER AND POWER, and DOES 1 THROUGH 50, <br><br> Defendants. | Case No. 2:21-cv-7503 SB (PDx) <br><br> Hon. Stanley Blumenfeld Jr. Magistrate Patricia Donahue <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> [Filed concurrently with Request for Judicial Notice and Declaration of Guy C. Nicholson] <br><br> Date: January 21, 2022 <br> Time: 8:30 a.m. <br> Crtrm.: 6C |

1  TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that on January 21, 2022, at 8:30 a.m., or as soon

3  thereafter as the matter may be heard, before the Honorable Stanley Blumenfeld Jr.,

4  United States District Judge, in the above-entitled Court, located at the First Street

5  Courthouse, Courtroom 6C, 6th Floor, 350 West 1st Street, Los Angeles, California,

6  90012, defendants Eric Garcetti ("Garcetti"), Joseph Brajevich ("Brajevich"), the City

7  of Los Angeles (the "City"), and the City of Los Angeles by and through its

8  Department of Water and Power ("LADWP") (collectively, "Defendants") will and

9  hereby do move this Court pursuant to the "first-to-file rule" and 28 U.S.C.

10  section 1404(a), for an order transferring this action to the Bankruptcy Court for the

11  District of Arizona, Phoenix Division or staying this action in the alternative.

12      This Motion is based on this notice of motion, the accompanying memorandum

13  of points and authorities; the concurrently filed declaration of Guy C. Nicholson and

14  exhibits attached thereto; the concurrently filed request for judicial notice; all

15  pleadings and documents on file with the Court; and such further written and/or oral

16  evidence and argument as the Court may allow.

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28

1   This Motion is made following the attempted meet and confer of counsel
2   pursuant to Local Rules 7-3 that took place on November 24, 2021, December 2,
3   2021, and December 13, 2021.  (*See* Declaration of Guy Nicholson ("Nicholson
4   Decl.") ¶¶ 2-4 , Exs. 1-3.)

5

6   DATED:  December 20, 2021        BROWNE GEORGE ROSS
7                                    O'BRIEN ANNAGUEY & ELLIS LLP
                                         Eric M. George
8                                        Guy C. Nicholson
                                         Kathryn L. McCann
9

10                                   By:     */s/ Guy C. Nicholson*
                                         Guy C. Nicholson
11                                   Attorneys for Defendants ERIC GARCETTI,
12                                   JOSEPH BRAJEVICH, THE CITY OF LOS
                                     ANGELES and THE CITY OF LOS
13                                   ANGELES BY AND THROUGH ITS
                                     DEPARTMENT OF WATER AND POWER
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................... 1

II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY .................. 2

   A.  Ardent's And Paradis's Bankruptcy Actions ........................................ 2

   B.  The City's Adversary Complaint ............................................................ 3

   C.  The Trustee's Complaint ....................................................................... 5

   D.  The Bankruptcy Court Denied The Trustee's Motion To Transfer
       The City's Adversary Complaint .......................................................... 5

III. LEGAL ANALYSIS ................................................................................. 6

   A.  The Court Should Decline To Exercise Jurisdiction Over The
       Trustee's Complaint Under The First-To-File Rule .............................. 7

       1.  The First-To-File Factors Have Been Satisfied ............................ 8

       2.  No Exceptions To The First-To-File Rule Apply ....................... 10

   B.  The Court Should Transfer The Complaint Pursuant To
       28 U.S.C. Section 1404(a) .................................................................. 12

       1.  The Interests Of Justice Strongly Support Transfer ................... 12

       2.  The Forum Selection Clauses Should Not Be Given
           Deference As They Violate A Central Purpose Of The
           Bankruptcy Code ........................................................................ 14

   C.  The City Had No Choice Other Than To File Its Core Proceeding
       In Arizona ........................................................................................... 15

IV. CONCLUSION ..................................................................................... 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*A. J. Indus., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*,
 503 F.2d 384 (9th Cir. 1974) ................................................................. 13

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
 946 F.2d 622 (9th Cir. 1991) ................................................. 7, 8, 10, 12

*Apple Inc. v. Psystar Corp.*,
 658 F.3d 1150 (9th Cir. 2011) ................................................................. 7

*Balboa Capital Corp. v. Siddiqui Transitions MHT LLC*,
 No. 17-cv-1107-JLS, 2017 WL 7806635 (C.D. Cal. Aug. 23, 2017) ................. 14

*Bite Tech, Inc. v. X2 Impact, Inc.*,
 No. 12-cv-5888-EMC, 2013 WL 871926 (N.D. Cal. Mar. 7, 2013) .................... 13

*British Telecomms. plc v. McDonnell Douglas Corp.*,
 No. 93-cv-677-MHP, 1993 WL 149860 (N.D. Cal. May 3, 1993) ...................... 9

*Byerson v. Equifax Info. Servs., LLC*,
 467 F. Supp. 2d 627 (E.D. Va. 2006) ..................................................... 12

*Cedars-Sinai Med. Ctr. v. Shalala*,
 125 F.3d 765 (9th Cir. 1997) ................................................................. 7

*Continental Grain Co. v. The FBL-585*,
 364 U.S. 19 (1960) ............................................................................. 13

*Crawford v. Bell*,
 599 F.2d 890 (9th Cir. 1979) ............................................................ 7, 12

*Durham Prods., Inc. v. Sterling Film Portfolio, Ltd., Series A*,
 537 F. Supp. 1241 (S.D.N.Y. 1982) ........................................................ 13

*EEOC v. Univ. of Pa.*,
 850 F.2d 969 (3d Cir. 1988) .................................................................. 7

*Ferens v. John Deere Co.*,
 494 U.S. 516 (1990) ........................................................................... 13

*Gladys Ragsdale Tr. v. Tostige (In re Tostige)*,
 537 B.R. 847 (Bankr. E.D. Mich. 2015). ............................................ 10, 16

*Gruntz v. Cty. of L.A. (In re Gruntz)*,
　202 F.3d 1074 (9th Cir. 2000) ............................................................................ 11

*Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness, Inc.*,
　179 F.R.D. 264 (C.D. Cal. 1998) ......................................................................... 9

*Hawkins v. Gerber Prods. Co.*,
　924 F. Supp. 2d 1208 (S.D. Cal. 2013) ............................................................ 13

*Hi. Airlines, Inc. v. United States (In re HAL, Inc.)*,
　122 F.3d 851 (9th Cir. 1997) .............................................................................. 10

*Huse v. Huse-Sporsem, A.S. (In re Birting Fisheries, Inc.)*,
　300 B.R. 489 (B.A.P. 9th Cir. 2003) .................................................................. 11

*In re Buckenmaier*,
　127 B.R. 233 (B.A.P. 9th Cir. 1991) .................................................................. 10

*In re Crowe*,
　No. 4:19-bk-04406-BMW, 2021 Bankr. LEXIS 262 (Bankr. D. Ariz.
　Feb. 4, 2021) ........................................................................................................ 16

*In re Lakeside Cmty. Hosp.*,
　151 B.R. 887 (N.D. Ill. 1993) ............................................................................ 10

*Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*,
　544 F. Supp. 2d 949 (N.D. Cal. 2008).............................................................. 7, 8

*Jones v. GNC Franchising, Inc.*,
　211 F.3d 495 (9th Cir. 2000) .............................................................................. 12

*Kismet Acquisition, LLC v. Icenhower (In re Icenhower)*,
　757 F.3d 1044 (9th Cir. 2014) ............................................................................ 14

*Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*,
　787 F.3d 1237 (9th Cir. 2015) ............................................................................ 12

*Kurz v. EMAK Worldwide, Inc.*,
　464 B.R. 635 (D. Del. 2011) .............................................................................. 14

*Microchip Tech., Inc. v. United Module Corp.*,
　No. 10-cv-4241-LHK, 2011 WL 2669627 (N.D. Cal. July 7, 2011) ..................... 8

*Nakash v. Marciano*,
　882 F.2d 1411 (9th Cir. 1989) .............................................................................. 8

*Sandoval v. Redfin Corp.*,
    No. 14-cv-4444-SC, 2015 WL 65085 (N.D. Cal. Jan. 5, 2015)....................13, 14

*United States Dep't of Agric. v. Huff (In re Huff)*,
    343 B.R. 136 (W.D. Pa. 2006) ....................................................................16

*United States v. Arkison (In re Cascade Rds.)*,
    34 F.3d 756 (9th Cir. 1994) ..............................................................10, 15

*Vester v. Werner Enters., Inc.*,
    No. 17-cv-96-GW, 2017 WL 1493673 (C.D. Cal. Apr. 24, 2017) ........................7

*Welded Constr., L.P. v. The Williams Cos. (In re Welded Constr., L.P.)*,
    609 B.R. 101 (Bankr. D. Del. 2019)....................................................14

**FEDERAL STATUTES**

11 U.S.C. § 362(a)(7) .........................................................................10, 15

11 U.S.C. § 553(a) ...................................................................................10

28 U.S.C. § 157(b)(2)(C) .........................................................................15

28 U.S.C. § 157(b)(2)(O) .........................................................................16

28 U.S.C. § 1404...........................................................................*passim*

42 U.S.C. § 1983 ......................................................................................10

**STATE STATUTES**

California Government Code § 1090................................................3, 4, 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This Motion arises from Plaintiff Eric Haley's ("Trustee"), Chapter 7 Trustee for Ardent Cyber Solutions, LLC ("Ardent"), improper filing of litigation in this Court regarding core matters that are already squarely before the Honorable Paul Sala in the Bankruptcy Court for the District of Arizona in connection with an Adversary Complaint filed by the City in that forum.  Accordingly, the above-referenced action should either be (1) transferred to the Bankruptcy Court in Arizona, or (2) stayed pending resolution of the City's Adversary Complaint, Adv. No. 2:21-ap-172-PS, which undeniably involves substantially similar litigation issues among nearly all of the parties to this case.  Ardent voluntarily chose the Arizona forum for its bankruptcy case which, in turn, compelled the City to bring its Adversary Complaint in that jurisdiction.

First, transfer or stay of the above-referenced action is warranted under the "first-to-file" rule as the Complaint in this second-filed action by Ardent involves substantially similar parties and the same or substantially similar legal and factual issues.  Ardent and its sole owner, Paul O. Paradis ("Paradis"), filed separate bankruptcy proceedings in Arizona Bankruptcy Court -- Paradis relocated from California to Arizona.  Again, the City, in turn, subsequently filed the Adversary Complaint in the Bankruptcy Court exercising its right to request a declaratory judgment for a setoff of its $21.9 million claim against Ardent from any alleged damages claimed by Ardent, and to obtain a determination that certain contracts the City entered into with Ardent are void.

Despite the fact that the Adversary Complaint had been pending for months, the Complaint was filed in this Court seeking a judgment related to the very contracts that the City sought to have determined void.  In the process, the Trustee has improperly duplicated proceedings, caused parties to engage in needless motion

practice, and delayed resolution of the City's claims raised in the Adversary Complaint.

Second, transfer of the Complaint is warranted under 28 U.S.C. section 1404 because allowing the Trustee to pursue "core" bankruptcy matters in this Court would contravene a core purpose of the Bankruptcy Code: centralizing proceedings. Alternatively, the instant action should be stayed pending resolution of the Adversary Complaint under the Court's general discretionary authority given the waste of judicial resources, the risk of inconsistent outcomes, and the prejudice and expense to the City caused by this duplicative lawsuit.

Third, the Bankruptcy Court, on December 2, 2021, denied the ***Trustee's motion*** to transfer the Adversary Complaint from Arizona to the Central District of California. As discussed more fully below, the Bankruptcy Court, *inter alia*, ruled that the issues to be adjudicated in the Adversary Complaint are "core" to the bankruptcy proceeding and therefore most appropriately litigated in Arizona. The Bankruptcy Court also determined that the Trustee had failed to proffer evidence demonstrating a sufficient, or any, factual basis to transfer the case to the Central District of California. (*See* Declaration of Guy Nicholson ("Nicholson Decl.") ¶ 18, Ex. 14; Request for Judicial Notice ("RJN"), Ex. 14.) Transfer is not only necessary and appropriate, but the only way, to avoid a multiplicity of litigation and to avoid the waste of judicial resources.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   Ardent's And Paradis's Bankruptcy Actions

On June 3, 2020, Ardent and Paradis each filed voluntary Chapter 11 bankruptcy cases with the Bankruptcy Court for the District of Arizona, submitting themselves to the Bankruptcy Court's jurisdiction in Arizona. (Nicholson Decl. ¶ 6, Exs. 4, 5; RJN, Exs. 4, 5.) On October 22, 2020, the City filed a proof of claim against Ardent in the amount of $21.9 million. (Nicholson Decl. ¶ 7, Ex. 6; RJN, Ex. 6.)

### B.   The City's Adversary Complaint

On June 24, 2021, the City filed its Adversary Complaint in Ardent's Arizona bankruptcy case. (Nicholson Decl. ¶ 8, Ex. 7; RJN, Ex. 7.)  The focus of that lawsuit is the manner in which Paradis secured a no-bid $30 million consulting contract between the City and Aventador Utility Solutions, LLC ("Aventador"), which has since changed its name to Ardent (the "Aventador Contract").  (Nicholson Decl. ¶¶ 8, 10, Ex. 7.)  In the Adversary Complaint, the City alleges that the Aventador Contract was procured through Paradis's self-dealing in violation of California Government Code section 1090; and is therefore void.  (*Id*.)

As alleged in further detail in the City's Adversary Complaint, as of March 4, 2019, Ardent had received at least $21.9 million in public funds under the Aventador Contract.  (*Id*.)  Moreover, in March 2019, a California state court entered an order enjoining the City from making any payments under the Aventador Contract to Paradis or any entity in which he held an interest (which included Ardent). (Nicholson Decl. ¶ 10, Ex. 9 at p. 2; RJN, Ex. 9.)  Shortly after the March 2019 hearing, Paradis purported to divest himself of ownership in, and affiliation with, Ardent by supposedly transferring his interest therein to Ryan Clarke ("Clarke"), one of Ardent's employees.  (Nicholson Decl. ¶ 11, Ex. 5; RJN, Ex. 5.)  On March 14, 2019, the City formally notified Ardent that it was terminating the Aventador Contract effective April 13, 2019.  (Nicholson Decl. ¶ 12, Ex. 10; RJN, Ex. 10.)  However, to avoid a potential lapse of critical services, the City also agreed to a limited, short-term contract with Ardent, on a strictly interim basis (the "Ardent Contract").  (Nicholson Decl. ¶ 13, Ex. 7; RJN, Ex. 7.)

Paradis stated in his personal Bankruptcy Schedules, executed under penalty of perjury, that he sold his membership interest in Ardent to Clarke in exchange for "an antique coin valued at $1,057.00."   (Nicholson Decl. ¶ 11, Ex. 5 at p. 61.)  Several months after the purported sale of Aventador to Clarke, Paradis -- in his words -- "reversed" this purported transaction, once again becoming Ardent's sole

owner and managing member.  (Nicholson Decl. ¶ 14, Ex. 11 at pp. 20-23; RJN, Ex. 11.)   The truth disclosed only recently was that Paradis had never actually surrendered control over Aventador/Ardent.[1]

On its Bankruptcy Schedules, Ardent has asserted that the City owes Ardent in excess of $5,000,000 for services allegedly rendered pursuant to the Aventador Contract and/or under the Ardent Contract.  (Nicholson Decl. ¶ 14, Ex. 11 at pp. 3-4.)

At its core, the Adversary Complaint requests a determination that the City be permitted to set-off the $21.9 million owing to it against any amounts allegedly owing to Ardent.  Paragraph 41 of the Adversary Complaint provides:

> By reason of the parties' conflicting positions, an issue has arisen and now exists as to whether the Aventador Contract is valid and enforceable and the extent of any monetary set-off to which the City is entitled against any amounts claimed due under the Aventador Contract or the Ardent Contract.  Therefore, the City seeks direction from this Court as to the foregoing and the parties' respective rights relative to the Aventador Contract and the Ardent Contract.

(Nicholson Decl. ¶ 15, Ex. 7 at ¶ 41; RJN, Ex. 7.)  In addition to its request for a setoff determination, the City requested a determination that the Aventador Contract is void and unenforceable, and accordingly, any claims for payment to Ardent be extinguished.  (Nicholson Decl. ¶ 15, Ex. 7 at p. 10.)

Within the past two weeks, Paradis filed a guilty plea in *United States of America v. Paradis*, Case No. 2:21-cr-540 (C.D. Cal.), admitting to his extensive acts

---

[1]   Exhibits 16, 17, and 18 attached to the Nicholson Declaration are the plea agreements filed by Paradis, David Wright (the LADWP's terminated General Manager), and David Alexander (the LADWP's former Chief Cyber Risk Officer), in their respective criminal cases.  (Nicholson Decl. ¶ 20, Exs. 16-18; RJN, Exs. 16-18.) Those agreements collectively show the inner workings of a criminal conspiracy whereby Paradis was able to illegally obtain the contracts at issue in the instant case and which are the subject of the Adversary Proceeding pending in Arizona.  Those plea agreements also show that Paradis never really surrendered control over Aventador/Ardent.

of bribery and to his role in spearheading a criminal conspiracy whereby he indeed improperly influenced the City to award the Aventador Contract to Aventador (now known as Ardent) which he solely owned.  (Nicholson Decl. ¶ 20, Ex. 16; RJN, Ex. 16.)  In addition to Paradis's guilty plea, the terminated General Manger of the Los Angeles Department of Water and Power ("LADWP"), David Wright, and the LADWP's former Chief Cyber Risk Officer, David Alexander, also pled guilty to similar crimes both admitting to knowingly participating in Paradis's conspiracy and to illegally securing not only the original Aventador Contract but subsequent (and related) Ardent contracts as well.  (Nicholson Decl. ¶ 20, Exs. 17-18; RJN, Exs. 17-18.)

### C.   The Trustee's Complaint

On September 20, 2021, the Trustee filed his Complaint with this Court (the "Complaint").  The Complaint, like the City's Adversary Complaint, alleges facts that involve and overlap with "core matters" that go to the heart of the Bankruptcy Code's principal jurisdiction.  The Complaint relates to the very contracts that the City is seeking to have determined void in its Adversary Complaint.  For example, the Complaint describes what Ardent contended was its "exemplary" work under the Aventador and Ardent Contracts, which allegedly entitled it to payment.  (*See* Compl. ¶¶ 10-14, 116-129, 137-150.)  The Complaint also raises three (3) claims against the City related to non-payment under the Aventador Contract or Ardent Contract [Counts IV – VI] and two claims against a City official for allegedly interfering with the City's payments to Ardent [Counts VII – VIII].  (*See id.* ¶¶ 225-240.)

### D.   The Bankruptcy Court Denied The Trustee's Motion To Transfer The City's Adversary Complaint

Within twenty-four (24) hours of filing the instant Complaint, the Trustee filed a motion in the Arizona Bankruptcy Court to transfer the City's Adversary Proceeding to this Court.  (Nicholson Decl. ¶ 16, Ex. 12; RJN, Ex. 12.)  Following a hearing on November 16, 2021, the Bankruptcy Court denied the Trustee's motion

on December 2, 2021.  (Nicholson Decl. ¶¶ 17, 18, Exs. 13, 14; RJN, Exs. 13, 14.)
The Bankruptcy Court rejected the Trustee's request to transfer the Adversary
Complaint to this Court because the City's Adversary Complaint "raises core matters
relating to the determination of the City's claim and the debtor/creditor relationship
between [Ardent] and the City."  (Nicholson Decl., Ex. 14 at p. 4.)  The Bankruptcy
Court concluded that the determination of the City's $21.9 million dollar proof of
claim "is fundamental to the City's claim for setoff," and therefore "the City's
complaint, and proof of claim, raise matters over which this court has statutorily core
jurisdiction" (*id.*, Ex. 14 at p. 3), and that the Trustee failed to demonstrate that the
Complaint filed in this Court was grounds for transferring the City's Adversary
Proceeding to the Central District of California (*id.*, Ex. 14 at p. 4).

Given that the City's Adversary Complaint without a doubt will be adjudicated
in the Bankruptcy Court in Arizona, the instant motion is necessary to ensure that the
Complaint is also adjudicated in conjunction with the Adversary Complaint as they
involve the same and overlapping core issues.  The Complaint should therefore be
referred to the Bankruptcy Court pursuant to the U.S. District Court for the District
of Arizona's General Order 01-15 because it is "related to a case under title 11."
(Nicholson Decl. ¶ 19, Ex. 15; RJN, Ex. 15.)

## III.   <u>LEGAL ANALYSIS</u>

As explained below, transfer is warranted because (i) the City's Adversary
Complaint has been pending in Arizona (the forum chosen by Ardent) for months
before this litigation was commenced and thus, the first-to-file rule should be applied;
(ii) transfer pursuant to 28 U.S.C. section 1404 is appropriate because public policy
favors resolving the Complaint in the Bankruptcy Court; (iii) the Trustee has already
requested that the Arizona Bankruptcy Court adjudicate the question concerning
where the pertinent issues should be litigated -- after full briefing and oral argument,
the Bankruptcy Court decided against transferring the Adversary Proceeding to this

1  Court; and (iv) transferring the instant case to Arizona will promote judicial economy

2  and avoid the danger of inconsistent results.

3    **A.**   **The Court Should Decline To Exercise Jurisdiction Over The**

4       **Trustee's Complaint Under The First-To-File Rule**

5     This action should be transferred or stayed in favor of the City's first-filed

6  Adversary Complaint under the "first-to-file" rule, which is clearly applicable here.

7  The first-to-file rule is a "generally recognized doctrine of federal comity which

8  permits a district court to decline jurisdiction over an action when a complaint

9  involving the same parties and issues has already been filed in another district."

10  *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1161 (9th Cir. 2011) (quotations

11  omitted). The rule "was developed to serve[ ] the purpose of promoting efficiency

12  well and should not be disregarded lightly," and is designed to address "increasing

13  calendar congestion in the federal courts," *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946

14  F.2d 622, 625 (9th Cir. 1991), and "to avoid concurrent litigation in more than one

15  forum whenever consistent with the rights of the parties," *Crawford v. Bell*, 599 F.2d

16  890, 892-93 (9th Cir. 1979). The court presiding over the second-filed case "has

17  discretion to transfer, stay, or dismiss the second case in the interest of efficiency and

18  judicial economy." *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir.

19  1997) (citations omitted). The first-to-file rule should be disregarded only "in rare

20  or extraordinary circumstances." *EEOC v. Univ. of Pa.*, 850 F.2d 969, 972 (3d Cir.

21  1988).

22     Courts consider three factors when deciding whether to apply the first-to-file

23  rule: (i) the chronology of the two actions; (ii) the similarity of the parties, and

24  (iii) the similarity of the issues. *Vester v. Werner Enters., Inc.*, No. 17-cv-96-GW,

25  2017 WL 1493673, at *4 (C.D. Cal. Apr. 24, 2017) (citing *Alltrade*, 946 F.2d at 625).

26  The parties need not be identical between the two proceedings; "the rule is satisfied

27  if some parties in one matter are also in the other matter, regardless of whether there

28  are additional unmatched parties in one or both matters." *Intersearch Worldwide,*

1   *Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 959 n.6 (N.D. Cal. 2008)

2   (citations omitted).   Likewise, in evaluating the similarity of proceedings, "exact

3   parallelism" is not required.   *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir.

4   1989) ("It is enough if the two proceedings are 'substantially similar.'"); *Intersearch*,

5   544 F. Supp. 2d at 959 ("[T]he 'first-to-file' rule is satisfied by a sufficient similarity

6   of issues.").

7        Further, courts are not required to consider the convenience factors required

8   under 28 U.S.C. section 1404 because the first-to-file rule is "a general doctrine of

9   federal comity, rather [than] transferring these actions based on the Section 1404

10   reasons of convenience of parties and witnesses."   *Microchip Tech., Inc. v. United*

11   *Module Corp.*, No. 10-cv-4241-LHK, 2011 WL 2669627, at \*7 (N.D. Cal. July 7,

12   2011).   The only exceptions to the rule are (i) bad faith; (ii) anticipatory suit; and

13   (iii) forum shopping.   *See Alltrade*, 946 F.2d at 628.

14        Here, the requisite factors of chronology, similarity of parties, and similarity

15   of issues are all present, and none of the extreme exceptions apply.   The Complaint

16   should accordingly be transferred to the Bankruptcy Court, or in the alternative,

17   stayed.

18        **1.    The First-To-File Factors Have Been Satisfied**

19        The requirement of chronology is satisfied because the Adversary Complaint

20   was filed well before the Complaint was filed here.   (*Compare* Nicholson Decl., Ex. 7

21   *with* Compl.)   The City filed the Adversary Complaint on June 24, 2021 and the

22   Trustee filed the instant Complaint approximately two months later on September 20,

23   2021.   (*Id.*)   Moreover, the Trustee filed his Complaint only one day before he filed

24   his motion in the Bankruptcy Court to transfer the Adversary Complaint to this Court.

25        Second, the parties are substantially similar.   The central parties to this

26   litigation are the Trustee (acting on behalf of Ardent) and the City.   Although the

27   Trustee alleges separate claims against defendants Garcetti and Brajevich, who are

28   not parties to the Adversary Complaint, their inclusion does not defeat the similarity

of parties.  *See*, *e.g. Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 270 (C.D. Cal. 1998) ("The additionally named defendants in the two actions are merely derivative manufacturers of the primary parties.  Therefore, the Court finds there is a sufficient similarity between the parties in the two actions to satisfy this factor of the first-to-file rule."); *British Telecomms. plc v. McDonnell Douglas Corp.*, No. 93-cv-677-MHP, 1993 WL 149860, at *4 (N.D. Cal. May 3, 1993) ("While it is true that Telecheck is not a party to the Missouri action, nothing prevents British Telecommunications or BT North America from attempting to join Telecheck in the Missouri action.").

Third, the topics and issues in the two cases are substantially similar.  Indeed, the Bankruptcy Court recognized this on December 2, 2021 when it held that the City's Adversary Complaint raises core matters relating to the determination of the City's claim currently pending before the Bankruptcy Court.  (Nicholson Decl., Ex. 14.)  The central issue in both cases concerns the enforceability of the Ardent Contract and the Aventador Contract.  The Adversary Complaint advances the position that, notwithstanding Ardent's alleged performance under the agreements, Ardent is not entitled to payment because contracts in violation of California Government Code section 1090 are void.  (Nicholson Decl., Ex. 7 at ¶¶ 9-10, 35, 40.)  In addition to being void, the City asserts that Ardent is required to disgorge all monies paid under the Aventador Contract.  (*Id*., Ex. 7 at ¶¶ 35, 40.)

Likewise, the base subject matter of the Complaint directly relates to Ardent's performance under the Aventador and Ardent Contracts.  The Complaint describes what Ardent considered "exemplary" work under the Aventador and Ardent Contracts, which supposedly entitled it to payment.  (*See* Compl. ¶¶ 10-14, 117-129, 137-150.)  From there, the Trustee raises three claims against the City related to non-payment under the Aventador Contract or Ardent Contract [Counts IV, V, and VI] and two claims against a City official for allegedly interfering with the City's payments to Ardent [Counts VII and VIII].  (*See id.* ¶¶ 155-172, 183, 189, 197, 225-

240.)  Even the Complaint's 42 U.S.C. section 1983 claims concern information that Ardent discovered while it was performing services for the City under the Aventador and Ardent Contracts.  (*See id.* ¶¶ 151-154.)  Given the substantial overlap between the two cases, the Court should transfer the Complaint to prevent a multiplicity from litigating the same subject matter and, in turn, avoid the possibility of inconsistent results.

## 2.   No Exceptions To The First-To-File Rule Apply

None of the discretionary exceptions warranting departure from the first-to-file rule for reasons of equity -- "extraordinary circumstances, inequitable conduct, bad faith, or forum shopping" -- apply here.  *Alltrade*, 946 F.2d at 628.  In this case, the unique space that setoff occupies in the Bankruptcy Code defeats any assertions of bad faith, anticipatory filing, or forum shopping.  Section 553 of the Bankruptcy Code preserves a creditor's right to exercise a setoff pursuant to applicable state or federal law.  *United States v. Arkison (In re Cascade Rds.)*, 34 F.3d 756, 764 (9th Cir. 1994).  However, the only way that a creditor can exercise a setoff is if it obtains Bankruptcy Court approval because setoff is subject to the automatic stay.  11 U.S.C. §§ 362(a)(7), 553(a).

Moreover, even when a creditor has a valid right to setoff, the Bankruptcy Court always retains discretion whether to permit a creditor to exercise that right. *Arkison (In re Cascade Rds.)*, 34 F.3d at 764 (quoting *In re Lakeside Cmty. Hosp.*, 151 B.R. 887, 890 (N.D. Ill. 1993) ("Even if setoff is authorized by statute, it is within the bankruptcy judge's discretion, to be exercised within the principles of equity.")); *In re Buckenmaier*, 127 B.R. 233, 236 (B.A.P. 9th Cir. 1991) ("The disallowance of a setoff is within the discretion of the trial court."); *Hi. Airlines, Inc. v. United States (In re HAL, Inc.)*, 122 F.3d 851, 854 (9th Cir. 1997) (same).  Because Bankruptcy Courts must authorize a creditor's setoff, a declaration regarding setoff rights is a matter of "core" bankruptcy jurisdiction.  *See Gladys Ragsdale Tr. v. Tostige (In re Tostige)*, 537 B.R. 847, 850 (Bankr. E.D. Mich. 2015).  Bankruptcy Courts have

"exclusive jurisdiction over 'core proceedings.'"  *Huse v. Huse-Sporsem, A.S. (In re Birting Fisheries, Inc.)*, 300 B.R. 489, 499 (B.A.P. 9th Cir. 2003) (citing *Gruntz v. Cty. of L.A. (In re Gruntz)*, 202 F.3d 1074, 1081 (9th Cir. 2000)).

Because the only venue where the City could pursue a setoff claim was the Bankruptcy Court, the Adversary Complaint was not motivated by bad faith, the desire to file an anticipatory suit, or forum shopping.  Further, when the City filed the Adversary Complaint, it was not clear that the Trustee and Ardent would actually pursue litigation against the City.   (Nicholson Decl. ¶ 9, Ex. 8; RJN, Ex. 8.) Therefore, because the City's Adversary Complaint was not driven by an improper motive, the Court should enforce the first-to-file rule.

Additionally, the Trustee's Special Counsel previously acknowledged that the Bankruptcy Court is an appropriate venue for the parties to address their rights under the Ardent Contract and the Aventador Contract.  During the hearing regarding Ardent's application to employ Mr. Smith, Ardent's counsel, Allan Newdelman, explained:

> Now, one of the questions not raised with Mr. Smith, which I have discussed with him but maybe we're not yet firm on a decision, is that we are looking at the possibility of filing this lawsuit right here in the Bankruptcy Court as an Adversary as opposed to in – in California where the City of Los Angeles would have a home court advantage. So we're looking to do, potentially, right here.  Well, if we have a lawsuit pending here before we have the evidentiary hearing or complete the evidentiary hearing, you'll have a lawsuit here pending.

(Nicholson Decl. ¶ 9, Ex. 8 at 22:13-21.)   Any assertion that the City filed its Adversary Complaint in an attempt to gain a more favorable forum is not well taken. On the contrary, the City filed its Adversary Complaint in Arizona because Ardent and Paradis decided to commence their respective bankruptcy cases in that jurisdiction.

Moreover, as mentioned above, the Court should transfer or, at a minimum, stay, the Complaint under the first-to-file rule to avoid the risk of inconsistent

judgments from simultaneous litigation of mirror-image claims in two different courts and the resulting waste of judicial resources.  *See*, *e.g.*, *Crawford v. Bell*, 599 F.2d 890, 893 (9th Cir. 1979) ("increasing calendar congestion in the federal courts makes it imperative to avoid concurrent litigation in more than one forum whenever consistent with the rights of the parties"); *Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015) (district court did not abuse its discretion staying a lawsuit involving "substantially similar parties and issues" as "courts should be driven to maximize economy, consistency, and comity"); *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 636 (E.D. Va. 2006) (interest of justice warranted transferring case under first-to-file rule where claims are similar).

**B.** **The Court Should Transfer The Complaint Pursuant To 28 U.S.C. Section 1404(a)**

Regardless of the first-to-file rule, the Court should transfer this case to the District of Arizona pursuant to 28 U.S.C. section 1404 based on the strong public policy interest to litigate related claims in the same court.  District courts are permitted to transfer a civil case "for the convenience of parties and witnesses, in the interest of justice," if it is a district where the action could have been filed.  28 U.S.C. § 1404(a).  A district court has discretion when considering whether to transfer an action according to its "individualized, case-by-case consideration."[2]  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

**1.** **The Interests Of Justice Strongly Support Transfer**

The instant action should be transferred in the interests of justice given the Trustee's Complaint and the City's earlier-filed Adversary Proceeding in the

---

[2]   To the extent that convenience factors, such as those analyzed under 28 U.S.C. section 1404(a), are deemed relevant to the first-to-file rule, that inquiry should "be addressed to the court in the first-filed action.  Apprehension that the first court would fail to appropriately consider the convenience of the parties and the witnesses should not be a matter for [the court in the second-filed action's] consideration." *Alltrade*, 946 F.2d at 628.

Bankruptcy Court involve the same core issues.  The Supreme Court has "made quite clear that '[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to wastefulness of time, energy, and money that § 1404(a) was designed to prevent.'" *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) (quoting *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)).  "Pendency of related actions in the transferee forum is [ ] an important factor as [l]itigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids duplicitous (sic) litigation and inconsistent results." *Durham Prods., Inc. v. Sterling Film Portfolio, Ltd., Series A*, 537 F. Supp. 1241, 1243 (S.D.N.Y. 1982) (quotations omitted); *see also Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1214 (S.D. Cal. 2013) ("[A]n important consideration in determining whether the interests of justice dictate a transfer of venue is the pendency of a related case in the transferee forum"); *Sandoval v. Redfin Corp.*, No. 14-cv-4444-SC, 2015 WL 65085, at *2 (N.D. Cal. Jan. 5, 2015) (pendency of a related case in the transferee forum "weigh heavily in favor of transfer").  Similarly, "[t]he feasibility of consolidation is a significant factor in a transfer decision . . . because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties." *A. J. Indus., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 503 F.2d 384, 389 (9th Cir. 1974); *see also Bite Tech, Inc. v. X2 Impact, Inc.*, No. 12-cv-5888-EMC, 2013 WL 871926, at *6 (N.D. Cal. Mar. 7, 2013) (finding that cases involving "overlapping issues . . . may be consolidated" and "weighs strongly in favor of transfer").

Here, the interests of justice strongly support a transfer because an earlier-filed action involving the same core issues is currently pending in the Bankruptcy Court, and the two actions may feasibly be consolidated.  Even if other factors weigh against transfer, "[t]he interests of justice can be decisive" where "the weighty interests of

economy and avoidance of inconsistent judgments . . . outweigh any contrary considerations." *Sandoval*, 2015 WL 65085, at *2 (citations and quotations omitted).

### 2.   The Forum Selection Clauses Should Not Be Given Deference As They Violate A Central Purpose Of The Bankruptcy Code

The contract at issue here contains a forum selection clause requiring that any litigation arising from, or pertaining to, the subject contracts be litigated in California.  While such clauses ordinarily are given deference, Ardent's decision to initiate bankruptcy proceedings and thereby submit itself to the Bankruptcy Court's jurisdiction changed the analysis of these provisions.

Indeed, permitting the Trustee to pursue his core counterclaims in a jurisdiction other than Arizona would contravene the Bankruptcy Code's "strong public policy favoring centralization of bankruptcy proceedings in a bankruptcy court." *Balboa Capital Corp. v. Siddiqui Transitions MHT LLC*, No. 17-cv-1107-JLS, 2017 WL 7806635, at *3 (C.D. Cal. Aug. 23, 2017) (quoting *Kurz v. EMAK Worldwide, Inc.*, 464 B.R. 635, 640 (D. Del. 2011)).  Because of this strong public policy interest, Bankruptcy Courts regularly refuse to enforce forum selection clauses "where the matters at issue constitute core proceedings and are not inextricably intertwined with non-core proceedings." *Kismet Acquisition, LLC v. Icenhower (In re Icenhower)*, 757 F.3d 1044, 1051 (9th Cir. 2014); *see also Kurz*, 464 B.R. at 640 ("The determination of whether a claim is a core or non-core proceeding dictates a court's enforcement of a forum selection clause."); *Welded Constr., L.P. v. The Williams Cos. (In re Welded Constr., L.P.)*, 609 B.R. 101, 120 (Bankr. D. Del. 2019) (same).

Here, the Bankruptcy Court was already asked to rule on a motion ***brought by the Trustee himself*** to transfer the Adversary Complaint from Arizona to the Central District of California.  The Bankruptcy Court denied that motion ruling that the City's Adversary Complaint must be adjudicated by the Bankruptcy Court because it

constitutes a "core" matter.  (Nicholson Decl., Ex. 14.)  The Bankruptcy Court further recognized the longstanding rule that "bankruptcy courts need not enforce forum selection clauses in core matters," which includes those claims asserted in the City's Adversary Complaint.  (*Id.*)  The Trustee will likewise be required to litigate at least Counts III through VI of the Trustee's Complaint in the Bankruptcy Court because those constitute compulsory counterclaims, which are also within the Bankruptcy Court's exclusive jurisdiction.  28 U.S.C. § 157(b)(2)(C) ("Core proceedings include . . . counterclaims by the estate against persons filing claims against the estate.").

Because enforcement of the forum selection clause would violate a central purpose of the Bankruptcy Code, the Court should transfer this matter to the Bankruptcy Court for the District of Arizona so that it can be adjudicated together with the City's Adversary Complaint.

## C.   The City Had No Choice Other Than To File Its Core Proceeding In Arizona

By seeking bankruptcy protection in the Arizona Bankruptcy Court, Ardent utilized the automatic stay under section 362 of the Bankruptcy Code (11 U.S.C. section 362) to shield itself from the filing of litigation by its creditors.  At the same time, Ardent also chose to utilize the Bankruptcy Court to assert its own bankruptcy claim against the City in excess of $5 million.  Ardent apparently failed to appreciate that because the parties' claims arise out of the same contract or transactions, the City holds a claim to setoff the Ardent bankruptcy estate's claim against the City which could not have been asserted against Ardent without the Bankruptcy Court's permission.  *See* 11 U.S.C. § 362(a)(7), *Arkison (In re Cascade Rds.)*, 34 F.3d at 764 ("Even if setoff is authorized by statute, it is within the bankruptcy judge's discretion, to be exercised within the principles of equity.").

Not only was the City required to proceed against Ardent in Arizona to shield itself from Ardent's bankruptcy claim (a claim that will never be adjudicated anywhere other than in the Bankruptcy Court), the claims for relief asserted by the

City in its Adversary Complaint effectively "elevates an unsecured claim to secured status" and impacts potential distribution of the estate's assets to unsecured creditors. *In re Crowe*, No. 4:19-bk-04406-BMW, 2021 Bankr. LEXIS 262, at *11 (Bankr. D. Ariz. Feb. 4, 2021). In other words, resolution of the competing claims impacts not only the City and Ardent, but other creditors of the Ardent bankruptcy estate as well -- creditors who are subject to the Bankruptcy Court's jurisdiction in Arizona. Consequently, it should have come as no surprise to Ardent that the claims advanced by the City in its Adversary Complaint were deems to be "core" to the overall bankruptcy case and thus, properly decided in that jurisdiction. *Crowe*, No. 4:19-bk-04406-BMW, 2021 Bankr. LEXIS 262, at *11; *see also, e.g. Tostige (In re Tostige)*, 537 B.R. at 850 ("In addition, the Court has subject matter jurisdiction to decide Plaintiff's claim seeking the declaratory judgment, and that claim is a core proceeding, because the setoff-related issues that the Court decides today make this a core proceeding under 28 U.S.C. § 157(b)(2)(O)."); *United States Dep't of Agric. v. Huff (In re Huff)*, 343 B.R. 136, 140 (W.D. Pa. 2006) ("The plain meaning of the language in § 157(b)(2)(O) confers 'core' jurisdiction over any matter that affects the debtor-creditor relationship and a determination concerning the permissibility of a creditor's offset of a debtor's property falls within that plain meaning.").

If the City had not sought such setoff determination through its adversary proceeding, it would face significant prejudice being exposed to an alleged liability for Ardent's disputed accounts receivable. Seeking adjudication in the Arizona Bankruptcy Court undeniably promoted efficiency and finality in the parties' competing claims through a single forum and proceeding.

## IV. CONCLUSION

Based on the foregoing, the Court should either transfer the Complaint or stay the proceeding pending resolution of the Adversary Complaint. The first-to-file rule requires that the Complaint be transferred or stayed because both cases involve similar parties and claims. Even if the first-to-file rule is not applied, transfer

1  nevertheless is warranted under 28 U.S.C. section 1404 because the Bankruptcy

2  Code's policy of centralizing proceedings favors transferring the Complaint to the

3  Bankruptcy Court.

4  DATED:  December 20, 2021          BROWNE GEORGE ROSS
5                                    O'BRIEN ANNAGUEY & ELLIS LLP
                                        Eric M. George
6                                       Guy C. Nicholson
7                                       Kathryn L. McCann

8                                     By: _____/s/ Guy C. Nicholson_____
9                                              Guy C. Nicholson
10                                    Attorneys for Defendants ERIC GARCETTI,
                                      JOSEPH BRAJEVICH, THE CITY OF LOS
11                                    ANGELES and THE CITY OF LOS
                                      ANGELES BY AND THROUGH ITS
12                                    DEPARTMENT OF WATER AND POWER

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28